UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                       File No.  1:06-CR-32

v.

                                       HON. ROBERT HOLMES BELL

LAKENTO BRIAN SMITH,

       Defendant.
                                     /

## **O P I N I O N**

This matter came before the Court on Defendant Lakento Brian Smith's oral motion and written memorandum of law challenging the procedure by which the jury pool for this case was compiled. Defendant questions whether the jury selection process produced a result that violates Defendant's Sixth Amendment right to a jury of his peers by underrepresentation of racial minority populations within the pool.

A defendant is entitled to a petit jury selected from a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357, 359 (1979) (citing *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975)). One need not be a member of the excluded class in order to have standing to raise a fair cross-section challenge. *Id.* at 359 n. 1. In order to establish a *prima facie* violation of the Sixth Amendment fair cross-section requirement defendant must show

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such

> persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Ford v. Seabold*, 841 F.2d 677, 681 (6th Cir. 1988) (quoting *Duren*, 439 U.S. at 364).

This Court held an evidentiary hearing on Defendant's jury challenge on June 27, 2006. The government offered the testimony of Diane Hopkins, Jury Administrator for the United States District Court for the Western District of Michigan. This was the only evidence offered at the hearing. The Court makes the following factual findings based upon Ms. Hopkins' uncontradicted testimony.

This district has a Jury Selection Plan (the "Plan") that has been approved by the Sixth Circuit Judicial Council as complying with the law. The Plan provides that juror names will be randomly selected from a list comprised of registered voters and those with Michigan drivers licenses or identification cards. The Plan encompasses 22 counties in the Division 1 jury pool, the pool from which jurors are selected for trials held in Grand Rapids. The jury venire for Defendant's trial was selected in conformity with the Plan.

The general population data from the 2000 census reveals that the racial distribution for the total population 18 years and older in Division 1 is 90.4% white, 4.9% black or African American alone, 0.7% American Indian and Alaska Native alone, 1.0 % Asian alone, 0% Native Hawaiian and Other Pacific Islander alone, 1.8% some other race alone, and 1.2% two or more races. The qualified jurors in the jury wheel were 90.23% white, 2.35% Black or African American, 0.71% American Indian or Alaska Native, 0.55% Asian, 0.05% Native Hawaiian/Pacific Islander, 0.64% Other, 0.74% Multi-Racial, and 4.74% unknown. With

respect to the panel of 52 individuals who appeared for jury selection in this case, the statistics offered by the Jury Administrator reveal that 92.31% were white, 3.85 % were black, 1.92% were other and 1.92% were unknown.

The government contends that Defendant has not met any one of the three elements of his *prima facie* case of violation of the Sixth Amendment fair cross-section requirement.

With respect to the first element, Defendant contends that the distinctive group that is underrepresented in the jury venire is the group of racial minorities.[1] The government contends that non-whites do not constitute a distinctive group in the community.

The Sixth Circuit has recognized that the following test is generally used in determining whether a particular group is a distinctive group under the Sixth Amendment:

> (1) that the group is defined and limited by some factor (i.e., that the group has a definite composition such as by race or sex); (2) that a common thread or basic similarity in attitude, ideas, or experience runs through the group; and (3) that there is a community of interest among members of the group such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process.

*Ford*, 841 F.2d at 681-82.

Although a group defined by what it is not, i.e., non-white, does not have the commonality of attitudes, ideas or experiences that may be shared by a single race or culture,

---

[1] Defendant is African American. The percentage of African Americans on the panel was 3.85%, while the percentage of African Americans in the relevant population is 4.9%. These figures are so close as to be statistically insignificant. Perhaps in recognition of this fact, Defendant has chosen to focus on the total non-white or minority representation in the pool, rather than the African American representation.

they may share some commonality in their experiences as racial minorities. Without deciding the issue, the Court will assume, for purposes of this motion, that racial minorities are a distinctive group for purposes of the *prima facie* case. *See Ford*, 841 F.2d at 688 (assuming, for purposes of equal protection claim, that "non-whites" are a recognizable, distinct class).

The second element of the *prima facie* case requires a showing that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community.

The census data reveals that the non-white only population in the relevant community is 9.6%. According to Defendant, the minority representation in the pool was approximately 4% resulting in an over 50% underrepresentation. Defendant contends this underrepresentation is constitutionally substantial, and made even more so if it is a consistent underrepresentation.

As a preliminary matter, the Court does not agree with the numbers Defendant relies on. Defendant's contention that the minority representation in the pool was 4% appears to be based upon his visual observation of the jury panel. This visual observation is not supported by the evidence presented. The uncontradicted evidence revealed that 5.77% of the panel members categorized themselves as non-white, and an additional 1.92% was unnknown. Thus, between 5.77% and 7.69% were non-white, not 4% as claimed by Defendant.

4

Second, there is no requirement that the racial composition of the jury precisely mirror the racial composition of the relevant population. The Supreme Court emphasized in *Taylor* v. *Louisiana*, 419 U.S. 522 (1975), that while petit juries must be drawn from a source fairly representative of the community "we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition . . . ." *Id.* at 538. In *Duren* the Court found that a 39% disparity between the percentage of women in the community and the percentage of women in the jury venires was not representative of the community and was not "fair and reasonable." 439 U.S. at 365-66. In *Ford* the Sixth Circuit declined to rule on whether a disparity of 21.7% between the percentage of women in the community and the percentage of women in the jury venires was "fair and reasonable" because it concluded that women were not systematically excluded during the selection process. 841 F.2d at 684. However, in evaluating the defendant's equal protection claim, the Court held that a 5% non-white jury pool in a community with a total population of 9% non-whites, giving an absolute difference of 4%, was insubstantial. *Id.* at 688.

In this case the absolute difference between racial minorities in the population and racial minorities in the jury venire was between 1.91% and 3.83%. The difference is insubstantial and is not sufficient to show that the representation of racial minorities in the venire from which the jury was selected in this case was not fair and reasonable in relation to the percentage of racial minorities in the relevant community. The Court concludes that

5

Defendant has failed to meet his burden with respect to the second element of his *prima facie* case.

With respect to the third element of his *prima facie* case, Defendant has suggested that there is a consistent underrepresentation of minorities in jury panels. Defendant has presented no evidence to support this suggestion, but suggests that it is the duty of the government to document the actual minority participation in all cases brought before this Court so that it can be determined whether or not there is a systematic exclusion of minorities in the jury selection process.

Although the Jury Administrator does not document the racial composition of the jury venires in each trial, she does keep a historical record of the racial composition of the qualified jurors in the jury wheel from which the jury venires are drawn. In the current Division 1 qualified jury wheel, 5.04% are minorities and 4.74% are unknown. *See* JS-12 Report for Division 1, attached hereto. Based upon the number of individuals who do not identify their race, it is impossible for the Court to say with any certainty whether the percentage of racial minorities in the jury wheel is below the 9.6% population of racial minorities in the relevant community. The Court can say with certainty, however, that the underrepresentation in the qualified jury wheel, if any, is not constitutionally significant.

In addition, this Court has undertaken two jury composition studies in the last 20 years, one by Judge Gibson in 1988 and one by Judge Enslen in 2000. These studies confirmed that although there is some statistical underrepresentation of African Americans

in our jury venires, this underrepresentation is not due to the systematic exclusion of African Americans in the jury selection process. Defendant has presented no evidence to suggest that changing the relevant group from African Americans to racial minorities would change the conclusion that there is no systematic exclusion of non-whites. This District's Plan draws not only from the voter registration list, as required by statute, 28 U.S.C. § 1863(b)(2), but also draws from lists of those with Michigan drivers licenses or identification cards in an attempt to ensure that juries are selected from a fair cross-section of the community. The Plan has been reviewed and approved not only by Judge Gibson of this court in *Bracy*, but also by the Sixth Circuit Judicial Council. Defendant has not presented any evidence that would suggest that there have been such significant changes in the community that the sources from which this Court draws its jury list are no longer relevant or valid.

Defendant did not present sufficient evidence to support his contention that the juror selection process discriminated against racial minorities. Accordingly, his motion challenging the jury selection process will be denied.

An order consistent with this opinion will be entered.


Date:    June 29, 2006              /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE